Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Earl A. Hicks
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 1 6 2022

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:22-CR-163-MKD |
| Plaintiff, | INDICTMENT |
| v. | Vio.: 18 U.S.C. § 1347<br>Health Care Fraud<br>Counts (1 and 2) |
| STEVIE JUNIOR CORTER and<br>TAMARA MARIE CORTER, | |
| Defendants. | 18 U.S.C. § 641<br>Theft of Public Money<br>Counts (3 and 4) |
| | 18 U.S.C. § 982(a)(7), 18<br>U.S.C. § 981(a)(1)(C) and 28<br>U.S.C. § 2461(c)<br>Forfeiture Allegations |

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment unless otherwise stated:

### The Veterans Administration Health Care Program

1. The U.S. Department of Veterans Affairs (VA), a federal agency of the United States government, provides patient care and federal health benefits to

INDICTMENT – 1

veterans and their dependents. As relevant to this Indictment, the VA is comprised primarily of two administrations that provide health care services and benefits to veterans: the Veterans Health Administration (VHA) and the Veterans Benefits Administration (VBA).

2. The VHA provides comprehensive health care and related benefits and services for veterans, it is a heath care benefit program as defined in 18 U.S.C. § 1347 and 18 U.S.C. § 24(b).

3. The VBA is responsible for administering the VA's programs that provide financial and other forms of assistance to veterans such as compensation, pension, survivors' benefits, rehabilitation and employment assistance, education assistance, home loan guaranties, and life insurance coverage. The VBA is a heath care benefit program as defined in 18 U.S.C. § 1347 and 18 U.S.C. § 24(b).

4. Eligibility for most VA benefits is based upon discharge from active military service under other than dishonorable conditions.

5. With regard to health care benefits, veterans who enlisted after September 07, 1980, or who entered active duty after October 16, 1981, must also serve 24 continuous months to be eligible.

6. Service-disabled veterans, that is, veterans who sustained injury or illness that was incurred or aggravated during the course of their active military service, who are 50% or more disabled, receive priority in scheduling of hospital or outpatient medical appointments.

INDICTMENT – 2

### The Veterans Benefits Administration

7. Disability compensation monetary benefits are paid to service-disabled veterans. Disability compensation benefits are paid monthly and can generally vary with the degree and type of disability as well as the number of a veteran's dependents. Most veterans receive their disability benefit payments by direct deposit to a bank account, but some veterans receive benefits via check.

### Special Monthly Compensation

8. Special Monthly Compensation is an additional tax-free benefit that can be paid to service-disabled veterans, their spouses, surviving spouses and parents. Special Monthly Compensation is a higher rate of compensation paid to service-disabled veterans with special circumstances such as the need of aid and attendance by another person, or for a specific disability, such as loss of use of legs.

### Aid & Attendance

9. Eligible veterans who are patients in a nursing home, hospital, or who are housebound due to illness or injury, may be entitled to higher income limitations and an additional benefit known as Aid and Attendance. Aid and Attendance is an additional Veterans Administration payment, supplementing the VA pension, which provides for veterans requiring a higher level of regular care by another person or facility. Examples of "higher level of care" cited in 38 CFR § 3.352 include "inability of claimant to dress or undress himself," "frequent need of

INDICTMENT – 3

adjustment of any special prosthetic or orthopedic appliances," "inability to attend to the wants of nature", and "permanently bedridden."  In essence, the need for Aid and Attendance means helplessness or being so nearly helpless as to require the regular "aid and attendance" of another person.  The VA requires a physician's certification in order to qualify for Aid and Attendance benefits.

### VA Health Care Benefits

10. VA operates the nation's largest integrated health care system with more than 1,400 sites of care, including hospitals, community clinics, community living centers, domiciliary, readjustment counseling centers and various other facilities. VHA's health care program is a health care benefit program as defined in 18 U.S.C.§ 24(b), in that it provides for delivery of payment for health care benefits, items, and services to eligible veterans.

11. Any person who served in the active military, naval, or air service, and who was discharged or released under conditions other than dishonorable, may qualify for VHA health care benefits. Reservists and National Guard members may also qualify for VA health care benefits if they were called to active duty (other than for training only) by Federal order and completed the full period for which they were called or ordered to active duty.

12. Defendant STEVIE JUNIOR CORTER served in the United States military, was injured while on active duty, and was not dishonorably discharged, and therefore was eligible for certain VHA health care benefits.

INDICTMENT – 4

## Caregiver Support Program

13. Public Law 111-163, the Caregivers and Veterans Omnibus Health Services Act of 2010, expanded the health care benefits and services available to veterans by establishing the "Comprehensive Program of Assistance to Caregiver." (Caregiver Support Program).

14. The Caregiver Support Program was created to give additional support to veterans who were injured while serving on or after September 11, 2001, and their caregivers. The Caregiver Support Program requires that both the caregiver and veteran meet specific eligibility requirements, and that they jointly complete a formal application and approval process. The individual approved as the Primary Family Caregiver to an eligible veteran receives enhanced support services including a monthly stipend and eligibility for VA health care benefits for the caregiver.

15. The Caregiver Support Program stipend, paid for providing care to the qualifying veteran, depends on locality but can often exceed $2,500, tax free, per month.

16. Veteran and caregiver eligibility for the Caregiver Support Program are determined based upon several factors, including the veteran and caregiver report of care needs and a clinical assessment. The assessment was created as a tool to help determine what level of care is required from the caregiver and is used in determining the amount of caregiver benefits to be paid. Caregiver Support

INDICTMENT – 5

Program benefits are determined based on the veteran and caregiver's statements and representations concerning the veteran's "Activities of Daily Living" and "Supervision/Protection." The scores on these questions correlate into an overall designation as "High Dependence, Moderate Dependence, or Low Dependence." These "levels of dependence" are translated in financial stipends via "tier" one, two, and three benefit amounts which are paid to the caregiver after a cost of living, locality adjustment.

17. Once approved for the Caregiver Support Program, a veteran and caregiver are subject to quarterly re-assessments, as well as an annual in-home assessment conducted by or on behalf of the VHA. These re-assessments are used by the VHA to determine continued eligibility and/or changes in benefit amount.

### The Fraudulent Scheme

18. During times relevant to this Indictment, Defendants STEVIE JUNIOR CORTER and TAMARA MARIE CORTER falsely and fraudulently misrepresented the nature and seriousness of Defendant STEVIE JUNIOR CORTER's disabilities and claimed and received more service-connected disability compensation monthly from the VA than he was entitled to.

19. During times relevant to this Indictment, Defendant STEVIE JUNIOR CORTER falsely and fraudulently claimed and received more Special Monthly Compensation than he was entitled to, based upon his purported disabilities and special circumstances, including he needed a cane due to his lack of sight, could no

INDICTMENT – 6

longer drive, could not safely go up and down stairs and needed assistance for ambulation outside the home, therefore, needing aid and attendance.

20.  On or about March 9, 2017, Defendant STEVIE JUNIOR CORTER applied for and was approved for Aid and Attendance benefits, based upon his claim that he needed a cane due to his lack of sight, could no longer drive, could not safely go up and down stairs and needed assistance for all ambulation outside the home.  These knowingly and intentionally false and misleading statements, along with additional and subsequent false and fraudulent misrepresentations of his disabilities made by the Defendants and, defrauded the VA into approving Defendant STEVIE JUNIOR CORTER Aid and Attendance benefits, resulting in the Veteran's Benefits Administration paying out benefits to which Defendant was not entitled.

21.  Defendants STEVIE JUNIOR CORTER and TAMARA MARIE CORTER knowingly and intentionally made and used materially false and fraudulent statements and misrepresentations concerning Defendant STEVIE JUNIOR CORTER's disabilities, and his capabilities, in order to falsely and fraudulently claim VA health care benefits to which they were not entitled.

22.  On or about March 11, 2015, Defendant STEVIE JUNIOR CORTER, and his wife, Defendant TAMARA MARIE CORTER, applied for Caregiver Support Program benefits.

INDICTMENT – 7

23. On or about May 12, 2015, the VHA conducted an initial in-home assessment with Defendants STEVIE JUNIOR CORTER and Defendant TAMARA MARIE CORTER, who was applying to be Defendant STEVIE JUNIOR CORTER's caregiver, at their residence at 217 E. Iowa Ave., Chelan, WA. The purpose of the assessment was to assess Defendant STEVIE JUNIOR CORTER's activities of daily living and instrumental activities of daily living and needs to assist in evaluating him for benefits through the Caregiver Support Program. Defendants STEVIE JUNIOR CORTER and TAMARA MARIE CORTER falsely and fraudulently stated that Defendant STEVIE JUNIOR CORTER used a cane for ambulation and needed assistance with ambulation. They also stated he needed assistance with bathing, personal hygiene, and dressing. Defendants further falsely and fraudulently stated that Defendant STEVIE JUNIOR CORTER was not able to drive due to tunnel vision and lack of vision. Defendant TAMARA MARIE CORTER stated that they were getting ready to move and she was not sure how they were going to do this because Defendant STEVIE JUNIOR CORTER could not lift anything. Defendants falsely and fraudulently stated that Defendant TAMARA MARIE CORTER assisted Defendant STEVIE JUNIOR CORTER with all activities of daily living. Defendants further specifically falsely and fraudulently stated that Defendant TAMARA MARIE CORTER drove Defendant STEVIE JUNIOR CORTER

INDICTMENT – 8

everywhere he needed to go because he was not able to drive himself due to his disabilities.

24. Between on or about May 12, 2015 and on or about June 17, 2019, Defendants further falsely and fraudulently thereafter repeated to the VA the false and fraudulent representations that Defendant TAMARA MARIE CORTER was the primary caregiver for Defendant STEVIE JUNIOR CORTER; that Defendant STEVIE JUNIOR CORTER was unable to drive and therefore relied on Defendant TAMARA MARIE CORTER to drive him everywhere he needed to go; that Defendant STEVIE JUNIOR CORTER needed a caregiver because he could not perform activities of daily living without assistance; and that Defendant STEVIE JUNIOR CORTER could not live on his own and would need to be placed in an institution without the help and caregiving of Defendant TAMARA MARIE CORTER. These and other false and fraudulent statements and misrepresentations concerning Defendant STEVIE JUNIOR CORTER's disabilities, capabilities, and conditions, defrauded the VA into paying Caregiver Support Program benefits to TAMARA MARIE CORTER which she was not entitled to.

## COUNT 1

25. The allegations contained in paragraphs 1 through 24 [kb] are realleged and incorporated as if fully set forth in this paragraph.

26. Beginning no later than on or about March 9, 2017, and continuing until at least on or about November 18, 2021, in the Eastern District of Washington

INDICTMENT – 9

and elsewhere, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, knowingly and willfully executed and attempted to execute a scheme and artifice to obtain money and property owned by, and under the custody and control of, the Veteran's Benefits Administration, a health care benefit program as defined in 18 U.S.C.§ 24(b), by means of materially false and fraudulent pretenses, representations, and promises.

27. Specifically, as part of the fraudulent scheme, and in order to defraud the VBA and to obtain money and property under the VBA's custody and control, the Defendants, STEVIE JUNIOR CORTER, and TAMARA MARIE CORTER, repeatedly, knowingly, and intentionally made materially false and fraudulent statements that: (1) Defendant STEVIE JUNIOR CORTER required assistance in walking by use of a stability cane, blind cane or assistance of another person; (2) Defendant STEVIE JUNIOR CORTER was unable to drive and had to be driven everywhere by his wife, Defendant TAMARA MARIE CORTER; (3) Defendant STEVIE JUNIOR CORTER was blind and or could not see or otherwise had impaired vision that prevented him from doing daily tasks and activities of daily living without the assistance of a caregiver; and (4) Defendant STEVIE JUNIOR CORTER needed and used a blind cane for sight.

28. As a further part of the fraudulent scheme, STEVIE JUNIOR CORTER fraudulently used a stability cane and a cane for sight when attending assessments and examinations with Defendant TAMARA MARIE CORTER during which VA

INDICTMENT – 10

personnel were present in order to pretend that he needed to do so, while not needing or using a cane at other times. For example, on or about January 2, 2019, STEVIE JUNIOR CORTER, fraudulently used a stability cane, and blind cane when attending a Compensation and Pension examination at a VA Medical Center, in a further attempt to defraud the VA, but was surreptitiously observed driving and walking without assistance of a cane the day before the examination, and shortly after the examination.

29. Through this fraudulent scheme, and through these and other materially false and fraudulent statements, representations, and promises, Defendants falsely and fraudulently claimed at least $175,395 in VBA benefits to which Defendant STEVIE JUNIOR CORTER was not entitled, including disability compensation, Aid and Assistance, and Special Monthly Compensation programs.

30. Beginning no later than on or about March 9, 2017, and continuing until at least on or about November 18, 2021, in the Eastern District of Washington and elsewhere, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, knowingly and willfully executed and attempted to execute the above described scheme and artifice to obtain, by means of materially false and fraudulent pretenses and representations, benefits and services totaling at least $175,395, which they were not entitled to which were owned by and under the custody and control of the Veteran's Benefits Administration's benefit program, a health care benefit program as defined in 18 U.S.C.§ 24(b), in connection with the

INDICTMENT – 11

delivery of payment for health care benefits, items, and services all in violation of 18 U.S.C. § 1347. and 18 U.S.C. § 2.

## COUNT 2

31. The allegations contained in paragraphs 1 through 28 are realleged and incorporated as if fully set forth in this paragraph.

32. Beginning no later than on or about March 11, 2015, and continuing until at least on or about June 17, 2019, in the Eastern District of Washington, the Defendants, TAMARA MARIE CORTER, and STEVIE JUNIOR CORTER, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud the VHA's Caregiver Support Program and to obtain money and property owned by and under the custody and control of the VHA's Caregiver Support Program, a health care benefit program as defined in 18 U.S.C.§ 24(b), by means of materially false and fraudulent pretenses.

33. Specifically, as part of the fraudulent scheme, and in order to defraud the VHA's Caregiver Support Program and to obtain money and property owned by and under the custody and control of the Caregiver Support Program, Defendants STEVIE JUNIOR CORTER and TAMARA MARIE CORTER repeatedly, knowingly, and intentionally made materially false and fraudulent statements that: (1) Defendant STEVIE JUNIOR CORTER required assistance in walking by use of a stability cane, blind cane or assistance of another person; (2) Defendant STEVIE JUNIOR CORTER was unable to drive and had to be driven

INDICTMENT – 12

everywhere by his wife, Defendant TAMARA MARIE CORTER; (3) Defendant STEVIE JUNIOR CORTER was blind and or could not see or otherwise had impaired vision that prevented him from doing daily tasks and activities of daily living without the assistance of a caregiver; and (4) Defendant STEVIE JUNIOR CORTER needed and used a stability cane as well as a cane for sight.

34.  As a further part of the fraudulent scheme, Defendant STEVIE JUNIOR CORTER fraudulently reported he required assistance ambulating from Defendant TAMARA MARIE CORTER or used a cane when attending assessments or communicating with the Caregiver Support Program with Defendant TAMARA MARIE CORTER during which VA personnel were present in order to pretend that he needed to do so, while not needing or using a cane at other times.

35.  Through this fraudulent scheme, and through these and other materially false and fraudulent statements, representations, and promises, Defendants falsely and fraudulently claimed at least $90,805 in a VA stipend to TAMARA MARIE CORTER, STEVIE JUNIOR CORTER'S health care provider, and other health care benefits and services through the VHS Caregiver Support Program to which Defendants were not entitled.

36.  Beginning no later than on or about March 11, 2015, and continuing until at least on or about June 17, 2019, in the Eastern District of Washington and elsewhere, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, knowingly and willfully executed and attempted to execute the above

INDICTMENT – 13

described scheme and artifice to obtain, by means of materially false and fraudulent pretenses and representations, benefits and services totaling at least $90,805, which they were not entitled to, owned by and under the custody and control of the VHA's Caregiver Support Program, a health care benefit program as defined in 18 U.S.C.§ 24(b), in connection with the delivery of payment for health care benefits, items, and services, all in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2.

## COUNT 3

37. The allegations contained in paragraphs 1 through 34 are realleged and incorporated as if fully set forth in this paragraph.

38. Beginning no later than on or about March 9, 2017, and continuing until at least on or about November 18, 2021, within the Eastern District of Washington, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, willfully and knowingly stole and purloined benefits and services from the Veteran's Benefits Administration, an agency within the Department of Veterans Affairs, the value of said benefits and services exceeding $1000, to wit: $175,395, which was money and property of the United States; all in violation of 18 U.S.C. §§ 641 and 2.

## COUNT 4

39. The allegations contained in paragraphs 1 through 36 are realleged and incorporated as if fully set forth in this paragraph.

INDICTMENT – 14

40. Beginning no later than on or about April 15, 2015, and continuing through at least on or about June 17, 2019, within the Eastern District of Washington, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, willfully and knowingly stole and purloined benefits and services from the Veteran's Health Administration, an agency within the United States Department of Veterans Affairs, the value of said property and money exceeding $1000, to wit: at least $90,805.00, which was the money and property of the United States; all in violation of 18 U.S.C. §§ 641 and 2.

## NOTICE OF CRIMINAL FORFEITURE

The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures.

HEALTH CARE FRAUD

Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of an offense in violation of 18 U.S.C. § 1347, Healthcare Fraud, as set forth in Counts 1 and 2 of this Indictment, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, shall forfeit to the United States of America, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s). The property to be forfeited includes, but is not limited to the following:

MONEY JUDGMENT

INDICTMENT – 15

        A sum of money in United States currency, representing the total amount of proceeds obtained by the Defendants as a result of the Healthcare Fraud offense(s).

If any property subject for forfeiture pursuant to 18 U.S.C. § 982(a)(7), as a result of any act or omission of the Defendant(s):

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said Defendants up to the value of the forfeitable property described herein, all pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c).

THEFT OF PUBLIC MONEY

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of 18 U.S.C. § 641, Theft of Money from Veterans Affairs, as set forth in Counts 3 and 4 of this Indictment, the Defendants, STEVIE JUNIOR CORTER and TAMARA MARIE CORTER, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to the following:

MONEY JUDGMENT

INDICTMENT – 16

A sum of money in United States currency, representing the total amount of proceeds obtained by the Defendants as a result of the Theft of Public Money offense(s).

If any of the property described above, as the result of any act or omission of Defendants:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

DATED this 16th day of November, 2022.

A TRUE BILL

*Vanessa Waldref* (signature)
Vanessa R. Waldref
United States Attorney

*Earl A. Hicks* (signature)
Earl A. Hicks
Assistant United States Attorney

INDICTMENT – 17